372 So.2d 89 (1979)
THE FLORIDA BAR, Complainant,
v.
Gary H. NEELY, Respondent.
No. 55736.
Supreme Court of Florida.
June 7, 1979.
*90 J. Doyle Tumbleson, Bar Counsel, Daytona Beach, and David G. McGunegle, Branch Staff Counsel, Orlando, for complainant.
Paul E. Raymond of Raymond, Wilson, Conway, Barr & Burrows, Daytona Beach, for respondent.
PER CURIAM.
This disciplinary matter is before us on complaint of The Florida Bar against Gary H. Neely, report of the referee, and the Bar's petition for review of the disciplinary penalty recommended by the referee. The sole question presented for our review is the propriety of the recommended penalty of private reprimand under the circumstances of this case. We find that respondent's misconduct warrants more than a private reprimand but does not warrant the six-months suspension requested by the Bar. Consistent with disciplinary penalties imposed involving comparable misconduct, we conclude that a ninety-day suspension from the practice of law with automatic reinstatement after that time, to be followed by a supervised probation of six months, is warranted.
The referee has made the following findings of fact as to respondent's misconduct:
As to Count I
The Respondent is charged with violating Disciplinary Rules 5-101(A), 7-101 (A)(1) and 7-104(A)(2) of the Code of Professional Responsibility. The Complaint filed states the facts in the matter which briefly are that the Respondent dealt in the obtaining of real estate to the detriment of his clients and for his personal gain.
The evidence, as presented by various witnesses and their testimony, was sometimes conflicting and even vindictive especially as to the complaining witnesses in their testimony against the Respondent; however, the complaining witnesses' testimony, however vindictive, was not the issue in this matter. What was the issue under Count I was whether the Respondent took advantage of a situation involving his clients' real estate for his personal gain. I find that in spite of a great deal of conflicting testimony, the Respondent did, in fact, take advantage of a situation involving his clients' real estate, to their detriment and for his own personal gain thereby violating and breaching a standard of conduct not in keeping with the professional responsibility of a member of the Florida Bar. Incompetent secretaries, loose office procedures and poor bookkeeping are not excuses for the Respondent's self-dealing for personal gain at the expense of his clients.
The facts in this matter appear to be that in April 1974, E.B. Bennett and *91 Pearl Bennett, his wife, contacted and retained attorneys Peter Keating and Respondent to represent them in a mortgage default matter. They paid an initial fee of $100. The Bennetts, complainants in this matter, had executed an Agreement for Deed in favor of Robert T. Vliet on November 18, 1971, for Lot 35, Rio Vista, Victory Gardens, Number 3, Ormond Beach, Florida, for the consideration of $3,500. Because Mr. Vliet, could not keep up his payments, a foreclosure suit was filed on behalf of the Bennetts during the first week of May 1974. Mr. Vliet, a Michigan resident, came to Florida when he received notice of the foreclosure pending against him and went to see the Bennetts at their home. They referred him to their attorneys and Mr. Vliet went to see Mr. Neely. Within a day or so, a conference was held in Mr. Neely's office at which the complainants, Mr. Vliet, Mr. Neely, and Mr. Keating were present, though not all at the same time. Respondent discussed the case with the Bennetts in one room and with Mr. Vliet in another. Mr. Keating, who by this time had turned over the whole case to Gary Neely, went into the room with the Bennetts at one point and explained to them their options with regard to the property. The Bennetts testified without rebuttal that at one point in the meeting Mr. Neely offered to buy the parcel of land for himself. The Bennetts said they refused his offer, and stated their preference to continue with the foreclosure.
Approximately six weeks later, Mrs. Bennett called respondent and was informed that Mr. Vliet had given him the money necessary to pay off the mortgage, and that she and her husband must come to his office and pick it up. Although they had been expecting the mortgage foreclosure, they were now given the impression that they had to accept Mr. Vliet's offer to pay off the balance owing on the property. On August 15, 1974, the couple executed, at Mr. Neely's office, a warranty deed (Bar exhibit # 6) conveying the property to Robert Vliet. They accepted the money for the lot in the form of a check written on respondent's trust account, believing that the funds had been provided by Vliet to respondent for the payoff. Over a year later the Bennetts learned the land had been deeded from Mr. Vliet to Halifax Builders, Inc., a corporation owned by respondent. The conveyance, Bar Exhibit # 7, was dated October 7, 1974, and the consideration listed as $650. Respondent's varying explanations of the $650 were pointed out by Bar counsel at the referee hearing. At the April 2, 1976, grievance committee hearing, Neely said he received an assignment of Vliet's interest in the lot, minus $650 which he gave back to Vliet, as payment for a later criminal representation which was totally unrelated to the Bennetts' case. At the December 20, 1976, hearing, Neely stated that Vliet had agreed, in front of the Bennetts, to Neely's purchase of the lot and had agreed, to accept $650 for his equity in it. Respondent's also said he actually had paid the $650 to Vliet for the lot. At the referee hearing, respondent said he had advanced Vliet the $650 from personal funds held in his trust account, at the time he had paid the Bennetts the amount remaining due on the mortgage, i.e., late August, with the understanding that it would be repaid later. Whatever the true explanation of the $650 might have been, respondent did admit at the referee hearing that the money used to pay the Bennetts the amount due on the mortgage had actually come from his personal funds held in his trust account. It had not come from Robert Vliet, as the Bennetts consistently maintained they were told by respondent.
In light of all the above recounted facts and testimony, respondent did, apparently, take advantage of a situation involving his clients' real estate  *92 to their detriment and his personal gain. He has thereby violated and breached the standards of conduct and responsibility of members of The Florida Bar, to wit: Disciplinary Rules 5-101(A), 7-101(A)(1), and 7-104(A)(2) of the Code of Professional Responsibility.
As to Count II
The complaint filed states the facts in the matter which, briefly, are that contradictory statements were made by the Respondent at various grievance committee hearings and at the referee hearing  statements as to how the matter, which is at issue and forms the basis for Count I, actually transpired and occurred. The testimony reflects strong evidence that the Respondent lied under oath. The testimony also shows that the Respondent did not make a full disclosure of the facts and circumstances to the grievance committee when he had ample opportunity to do so. Under examination by the Bar counsel at the referee hearing, the following discrepancies in Respondent's prior testimony were brought out.
At the Seventh Judicial Circuit Grievance Committee "C" hearing held April 2, 1976, Respondent testified that Vliet had paid him $2,500 in cash with which to pay off the Bennett mortgage. The money, he said, was then deposited into his trust account, and a trust account check written to the Bennetts. Mr. Neely said that he had given a receipt for the cash to Vliet, that he had a record of such receipt, and submitted into evidence a copy of a trust account deposit slip reflecting a deposit of $2,500 to his trust account on July 14, 1974. The deposit slip, Bar Exhibit # 2 at the referee hearing, was marked "Vliet s/t Bennett." Bar counsel at the referee hearing pointed out that a bank code number, indicating deposit of a check, had been written beside the $2,500 figure (in the same handwriting). In fact, the deposit did reflect a check, one concerning an entirely different case of Mr. Neely's. The words "Vliet s/t Bennett" has been added at some time after the deposit was made, as shown by Bar Exhibit #3 an earlier duplicate of the deposit slip which did not have those words written on it. Testimony at the referee hearing by Mrs. Neely, who kept her husband's books, that she and the office secretaries were mostly responsible for the notation does not excuse Respondent's misrepresentation to the grievance committee. Respondent also testified at the April hearing that the later conveyance of the property to his corporation by Mr. Vliet (Bar Exhibit #7) on October 7, 1974, was totally unrelated to the Bennett's foreclosure case, and was instead payment for a later representation in a criminal matter. Respondent's story was different at the December 20, 1976, hearing. He testified that Vliet had not given him the money to pay the Bennetts, but that the trust account check he had given them to pay off the mortgage represented his own money, held in his trust account. He said that Vliet had agreed to Respondent's purchase of the lot, in front of the Bennetts, and had agreed to accept $650 for his equity in it. The lot had not been conveyed by Vliet to Halifax Builders, the corporation owned by Respondent, as payment for the later criminal representation. Rather, Neely then testified, he had not been paid at all for such representation.
At the referee hearing, Mr. Neely reiterated his December 20th testimony that the money given to the Bennetts had been his own. He added to the story, saying he had advanced the $650 to Mr. Vliet with the understanding it would be repaid, and had kept the Bennett/Vliet deed as security for such repayment. He stated that all the parties had agreed to this arrangement. He was not able to satisfactorily answer Bar counsel's questions about his inconsistent earlier story concerning, and presentation to the grievance committee *93 of, the altered deposit slip. Nor was he able to explain Bar Exhibit #9, the carbon of a receipt for $2,500 cash written by his receptionist to Robert Vliet, which he had shown to the grievance committee. The receipt, contained in a 1974 receipt book, was inexplicably dated 1976. Also he could not satisfactorily explain why the deed was not made out from the Bennetts directly to him, instead of through Mr. Vliet to Respondent's corporation, if everyone was aware and approved of the arrangement.
After taking into consideration all the evidence presented at the hearing, I can find no explanation for Mr. Neely's conduct except that he lied under oath, either at the grievance committee or referee hearing, or both, in an effort to hide the fact that he had taken advantage of his clients for his personal gain. By his conduct, respondent has thereby violated Disciplinary Rules 1-102(A)(4), 1-102(A) (5), and 1-102(A)(6) of the Code of Professional Responsibility, and Rule 11.02(3)(a) of the Integration Rule of the Florida Bar.
As to Count I, the referee recommends that respondent be found guilty of violating Disciplinary Rules 5-101(A),[1] 7-101(A)(1),[2] and 7-104(A)(2).[3] Relative to Count II, the referee recommends that respondent be found guilty of violating Disciplinary Rules 1-102(A)(4),[4] 1-102(A)(5),[5] and 1-102(A)(6),[6] and The Florida Bar Integration Rule, article XI, rule 11.02(3)(a).[7]
After review of the record and report of the referee, we hereby approve the referee's findings and recommendations as to guilt. We disagree, however, with the recommendation that the disciplinary penalty of private reprimand be imposed. Respondent argues that there are sufficient mitigating factors apparent from the record which justify such a lenient penalty in his case. These alleged factors include the *94 length of time that this disciplinary proceeding has been pending, the vindictiveness of the complaining witness, and the questionable credibility of the complaining witness. We find no merit to his contention that sufficient mitigating circumstances exist so as to warrant a private reprimand for misconduct which would normally be punished by suspension from the practice of law. There has been no inordinate delay in this case which could serve as a mitigating factor. The respondent was found guilty of self dealing to his client's detriment and to his own personal gain and was found guilty of lying under oath either before the grievance committee or referee hearing, or both, in an effort to hide the fact that he had taken advantage of his clients for his own personal gain. A disciplinary penalty must be fair to society and protect it from the unworthy while not denying the public the services of a qualified lawyer by an unduly harsh discipline. It must be fair to respondent by punishing him for the misconduct while at the same time encouraging rehabilitation, and it should be severe enough to deter others from similar misconduct. The Florida Bar v. Pahules, 233 So.2d 130 (Fla. 1970). With this view in mind, we find the appropriate discipline to be imposed in the present case is a ninety-day suspension followed by a six-months probation.
Accordingly, respondent is hereby suspended from the practice of law for a period of ninety days, to be followed by supervised probation for six months during which time respondent shall report on a monthly basis to staff counsel of The Florida Bar as to his case load, his accounting practices including accountings of his trust or escrow accounts and his office account, a list of his associates, if any, and a list of his office staff including the name of the person considered to be his office bookkeeper. Respondent is further directed to pay the costs of these proceedings in the amount of $1,172.17. This suspension shall be effective July 9, 1979, thereby giving respondent thirty days to close his practice and to take the necessary steps to protect his clients.
It is so ordered.
ENGLAND, C.J., and OVERTON, SUNDBERG, HATCHETT and ALDERMAN, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion, with which ADKINS, J., concurs.
BOYD, Justice, concurring in part and dissenting in part.
Respondent's clients had sold land on an agreement for deed which provided that if the purchaser should fail to meet a monthly payment obligation he would forfeit all funds paid under the contract as liquidated damages. The purchaser had paid approximately one thousand dollars and owed approximately twenty-five hundred dollars at the time of default. The sellers sought respondent's assistance in foreclosing.
After learning that the purchaser was ready and willing to pay the balance of the purchase price owed, the respondent advised the sellers to accept the money and to execute a deed. The sellers subsequently complained that respondent's conduct was unprofessional and that in advising them to deed the property he acted against their interests. In many instances in which buyers under contract for deed have defaulted on one or more monthly installments, but have tendered payment for the unpaid balance, courts of equity have denied forfeiture although provision for same has been made in the contract. The reason is that forfeiture under such literal enforcement of the contract would be unconscionable. The circumstances here would justify respondent's advice to his clients that their interest would be best served by accepting the unpaid balance of the contract when it was tendered, rather than to litigate in an uncertain effort to recover the land.
Since the buyer and sellers were hostile I see nothing wrong with respondent's meeting with them in separate conferences.
There is no clear and convincing evidence that respondent conspired with the buyer to purchase the property at the time the sellers accepted the balance of the purchase price. If he had no such intent at the time he concluded the matter for his clients, *95 there is no prohibition against his subsequent acquisition of an interest in the land.
The contradictory statements made to investigators for The Florida Bar demonstrates irresponsible office accounting practices. For this ethical violation I would privately reprimand the respondent, place him on six months of probation as is required by the majority, and require him to bear the costs of these proceedings.
ADKINS, J., concurs.
NOTES
[1] DR 5-101(A) provides:

Except with the consent of his client after full disclosure a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
[2] DR 7-101(A)(1) provides:

(A) A lawyer shall not intentionally:
(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
[3] DR 7-104(A)(2) provides:

(A) During the course of his representation of a client a lawyer shall not:
.....
(2) Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client.
[4] DR 1-102(A)(4) provides:

(A) A lawyer shall not:
.....
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
[5] DR 1-102(A)(5) provides:

(A) A lawyer shall not:
.....
(5) Engage in conduct that is prejudicial to the administration of justice.
[6] DR 1-102(A)(6) provides:

(A) A lawyer shall not:
.....
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[7] Fla. Bar Integr. Rule, art. XI, rule 11.02(3)(a) provides:

(a) Standards. The standards of professional conduct to be observed by members of the Bar are not limited to the observance of rules and avoidance of prohibitive acts, and the enumeration herein of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof. The commission by a lawyer of any act contrary to honesty, justice or good morals, whether the act is committed in the course of his relations as an attorney or otherwise, whether committed within or outside the State of Florida, and whether or not the act is a felony or misdemeanor, constitutes a cause for discipline.