604 So.2d 447 (1992)
THE FLORIDA BAR, Complainant,
v.
Patricia G. WILLIAMS, Respondent.
No. 75906.
Supreme Court of Florida.
June 25, 1992.
Rehearing Denied September 23, 1992.
*448 John F. Harkness, Jr., Executive Director, John T. Berry, Staff Counsel, Tallahassee, and Jacquelyn P. Needelman, Bar Counsel, Miami, for complainant.
Alcee L. Hastings, Miami, for respondent.
PER CURIAM.
This is a disciplinary proceeding in which The Florida Bar petitions this Court to disbar the respondent Patricia G. Williams from the practice of law. We have jurisdiction[1] and accordingly disbar the respondent.
The Florida Bar charged the respondent with eight counts alleging numerous ethical violations. The referee made the following findings as to each count.

Count I: Representation of Cochran
On November 26, 1986, Melvin Cochran (Cochran) retained the respondent to represent him in a domestic relations matter by signing a retainer agreement and paying the respondent money toward covering attorney fees. On numerous occasions between December 1986 and January 20, 1987, Cochran attempted unsuccessfully to contact the respondent about the status of his case. Despite Cochran's attempts, the respondent failed to return his telephone calls or contact Cochran about the case.
On January 20, 1987, Cochran sent a letter to the respondent requesting that she refund the monies paid for attorney fees and all of his personal papers. By January 30, 1987, the respondent filed a notice of appearance on behalf of Cochran. The respondent was notified of a hearing scheduled for February 5, 1987, and she advised Cochran that she would have the hearing continued. However, the respondent failed to move the trial court for a continuance and also failed to attend the hearing or have other counsel appear for Cochran. Cochran, relying on the respondent, did not appear. The trial court granted a final judgment of dissolution of marriage at the hearing.
The referee found the respondent guilty of violating Disciplinary Rules 6-101(A)(3) (neglect of a legal matter), 7-101(A)(1) (a lawyer shall not intentionally fail to seek lawful objectives of a client), 7-101(A)(2) (failure to carry out contract of employment entered into with client) of the former Code of Professional Responsibility and Rule Regulating the Florida Bar 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client).

Count II: Misrepresentation to the Grievance Committee
Melvin Judge (Judge) retained the respondent to represent him in a criminal case. On August 23, 1985, the respondent received a quitclaim deed on real estate property as security for her fee in representing Judge. On August 29, 1985, the respondent recorded the quitclaim deed and in January 1988, applied to United Mortgage Company for a mortgage loan in the amount of $25,000 on the property. On March 23, 1988, United Mortgage Company approved the respondent's application and provided her funding for the mortgage.
On April 20, 1988, the respondent appeared before the Eleventh Judicial Circuit Grievance Committee "J" in reference to the quitclaim deed and the property. Respondent in unsworn testimony stated at *449 the proceeding, "I have no money from that property and no mortgage on it, that I'm aware of." At the time of the respondent's comment, she had, in fact, received money from the property and had a mortgage issued, funded, and recorded regarding the property.
The referee found the respondent guilty of violating Rules Regulating the Florida Bar 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), 4-8.4(d) (conduct prejudicial to the administration of justice), and 3-4.3 (commission of any act unlawful or contrary to honesty and justice).[2]

Count III: Issuing a Worthless Check
On January 8, 1988, the respondent executed a promissory note for $25,000 and mortgage securing payment of such promissory note with United Mortgage Company. On March 22, 1988, R.R. Darwin became the holder of the note and mortgage by an assignment. The respondent owed Darwin a $403.34 payment on the note by May 31, 1988, which the respondent paid with a worthless check. On June 17, 1989, Darwin informed the respondent that the bank had returned the check for insufficient funds. The respondent issued another check which Darwin refused, preferring to accept cash, a cashier's check or money order to replace the worthless check. The respondent failed to pay Darwin monies due for the months of May, June, and July 1988. A Notice of Lis Pendens was filed on August 23, 1988. The respondent then made the mortgage payments after the filing of a civil complaint for foreclosure of the mortgage and the filing of a complaint with The Florida Bar.
The referee found the respondent guilty of violating Rules Regulating The Florida Bar 3-4.3 (commission of any act which is unlawful or contrary to honesty and justice), 4-8.4(b) (criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer in other respects), and 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

Count IV: Trust Account Violations
During the period of December 19, 1983 through October 26, 1986, the respondent maintained a trust account and two operating accounts. An audit of the respondent's accounts showed the following: the respondent failed to maintain the required minimum trust account records; the respondent failed to follow the required minimum trust accounting procedures; the respondent deposited client trust funds in the respondent's operating accounts; and the respondent commingled funds, depositing fees and client funds in her trust account.
The referee found the respondent guilty of violating former Integration Rule of The Florida Bar, article XI, rule 11.02(4) (trust funds and records), and Disciplinary Rule 9-102(A) (preserving identity of funds and property of a client) of the former Code of Professional Responsibility, and Rules Regulating The Florida Bar 4-1.15(a) (safe-keeping property), 5-1.1 (trust accounts), and 5-1.2 (trust records and procedures).

Count V: Trust Account Shortages
On March 22, 1984, the respondent had a balance of $1,693.45 in her trust account. At the same time, the respondent had client liabilities totaling $2,389.09, reflecting a shortage of $695.64. A month later on *450 April 22, 1984, the respondent had a balance of $1,225.37 in her trust account, and liabilities totaling $2,181.31, thus reflecting a $995.94 shortage. By December 24, 1984, the respondent's trust account showed a shortage of $1,749.56. The referee also found that on April 11, 1986, the respondent's trust account showed a shortage of $1,057.54. The referee noted that while no client suffered any actual loss and the respondent repaid all shortages, the respondent admitted to intentionally using the trust account funds to "keep her office open." The referee also indicated that the respondent expressed that she knew that the practice of using her trust funds was wrong.
The referee found the respondent guilty of violating Rule Regulating The Florida Bar 5-1.1 (a lawyer shall hold a client's funds in trust for specific purposes).

Count VI: Retention of Trust Account's Earned Interest
The respondent maintained her trust account in an interest-bearing account in which she retained the interest. Between December 19, 1983 and October 26, 1986, the respondent's trust account earned a total of $566.75.
The referee found the respondent guilty of violating former Integration Rule of The Florida Bar, article XI, rule 11.02(4)(d) (failing to comply with the provisions of handling interest earned on trust accounts).

Count VII: Excessive Contingency Fee Agreement
On October 9, 1985, Ms. Annie Ingraham retained the respondent to represent her and her minor son in an action against the Dade County School Board. The respondent had Ingraham and her son sign a retainer agreement that provided the respondent with forty percent of any award or settlement. Pursuant to section 768.28, Florida Statutes (1985), attorney fees in such cases are limited to twenty-five percent of recovery. When the respondent learned of the statutory limitation, she failed to inform Ingraham or the son that the fee would be reduced.
The referee found the respondent guilty of violating Disciplinary Rule 2-106(A) (a lawyer shall not enter into an agreement, charge or collect an illegal or clearly excessive fee) of the former Code of Professional Responsibility.

Count VIII: Representation of Ingraham
The respondent filed a complaint on behalf of Ingraham and her son against the Dade County School Board in October 1985. The complaint was dismissed for lack of prosecution and the respondent failed to notify either Ingraham or her son. The respondent filed amended complaints, some of which were dismissed. On July 9, 1987, the respondent took voluntary dismissals against two of the defendants without consulting with either Ingraham or her son. On August 26, 1987, the respondent filed a notice of voluntary dismissal dismissing Ingraham without ever discussing the action with her clients.
The referee found the respondent guilty of violating Disciplinary Rule 6-101(A)(3) (neglect of a legal matter) of the former Code of Professional Responsibility, and Rules Regulating The Florida Bar 4-1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter), and 4-1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation).
The referee recommended that the respondent receive a public reprimand, be suspended for the practice of law for a period of ninety days with automatic reinstatement. In addition, the referee recommended that the respondent be on probation for a period of two years. The Florida Bar seeks disbarment on the authority of The Florida Bar v. Mavrides, 442 So.2d 220 (Fla. 1983), where we found that the cumulative effect of an attorney's misconduct demonstrated an unfitness to practice law, and thus warranted disbarment. We agree with The Florida Bar that the respondent's misconduct warrants a tougher discipline than the referee's recommended ninety-day suspension. We find that this case rises to the level of disbarment. In determining the appropriate discipline, we are guided by the Florida Standards for Imposing *451 Lawyer Sanctions (Fla.Bar Bd. Governors 1992), and case law.
Standard 3.0 states in pertinent part that in determining an appropriate sanction a court should consider the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating factors. Florida Standards for Imposing Lawyer Sanctions 3.0.
We find that the respondent's numerous ethical violations resulted in three broad violations of duties as set out by the standards: 1) violations of duties owed to clients, 4.1 (failure to preserve the client's property) and 4.4 (lack of diligence); 2) violation of duties owed to the public, 5.1 (failure to maintain personal integrity); and 3) violation of duties owed to a legal system, 6.1 (false statements, fraud, and misrepresentation). Florida Standards for Imposing Lawyer Sanctions.
In addition to the respondent's violation of her duties, we have considered the three other factors outlined in standard 3.0 of the Florida Standards for Imposing Lawyer Sanctions. First, there is little evidence of the respondent's mental state at the time of the offenses. However, the record does show that concerning the trust account violations the respondent understood the wrongful nature of her actions at the time of the offense. Second, we note that the respondent's lack of diligence in both the Cochran and Ingraham case had the potential of causing great harm. In the past, this Court has suspended attorneys who have been found guilty of a lack of diligence in representing a client. See The Fla. Bar v. Coutant, 569 So.2d 442 (Fla. 1990) (where this Court suspended an attorney for thirty days because the attorney failed to act with reasonable diligence and promptness in representing a client, and failed to keep the client informed about the status of the case or comply promptly with the client's reasonable requests for information); see also The Fla. Bar v. Griggs, 522 So.2d 24 (Fla. 1988) (where this Court suspended an attorney for forty-five days with a two-year probationary period because the attorney failed to act with reasonable diligence in representing clients in a mortgage foreclosure and other actions, with repeated misstatements to clients regarding the status of the case). Similarly, the respondent's trust account violations had the potential for causing her clients harm, and are viewed as serious transgressions by this Court. See The Fla. Bar v. Tunsil, 503 So.2d 1230, 1231 (Fla. 1986).
Finally, we weigh the aggravating facts and mitigating factors developed in the record. Applying standard 9.22 of Florida Standards of Imposing Lawyer Sanctions we find the following aggravating factors: 1) multiple offenses; 2) dishonest motive; 3) prior disciplinary offenses; 4) submission of false statements or deceptive statements during the disciplinary process and 5) vulnerability of victims. In particular, we find the respondent's false and misleading statement to the Eleventh Circuit's Grievance Committee concerning whether she had mortgaged the property in question or received money from the property to be a serious aggravating factor. The respondent's subsequent explanation that her answer was in the context of a question concerning an earlier mortgage application on the same property is incredulous. The record shows that a month before she appeared before the Eleventh Circuit's Grievance Committee, the respondent had in fact mortgaged and received money from the property. This Court has suspended attorneys found guilty of lying. See The Fla. Bar v. Neely, 372 So.2d 89, 94 (Fla. 1979) (where this Court suspended an attorney for ninety days because the attorney lied under oath, either at a grievance committee or referee's hearing or both, in an effort to hide the fact that the attorney had taken advantage of his clients for personal gain); see also The Fla. Bar v. Poplack, 599 So.2d 116 (Fla. 1992) (where this Court suspended an attorney for thirty days followed by an eighteen-month probation because the attorney lied to a police officer during a criminal investigation). Dishonesty and a lack of candor cannot be tolerated in a profession built upon trust and respect for the law.
In determining the mitigating factors, we note that respondent's counsel failed to develop *452 any of the mitigating factors found in standard 9.3. In fact, the only mitigating factor shown in the record is that the respondent is a sole practitioner and may be considered inexperienced in the practice of law. These mitigating factors are outweighed by the significant and aggravating factors as well as the cumulative misconduct found in the instant case. As we stated in The Florida Bar v. Bern, 425 So.2d 526, 528 (Fla. 1982), this "Court deals more harshly with cumulative misconduct than it does with isolated misconduct." Thus, the respondent should be dealt with more harshly for her cumulative misconduct.
As we have stated in the past: "[D]isbarment is the extreme measure of discipline and should be resorted to only in cases where the lawyer demonstrates an attitude or course of conduct wholly inconsistent with approved professional standards." The Fla. Bar v. Pahules, 233 So.2d 130, 131 (Fla. 1970) (quoting State ex rel. The Fla. Bar v. Murrell, 74 So.2d 221, 223 (Fla. 1954)). We find that Williams' cumulative misconduct demonstrates an attitude and course of conduct that is inconsistent with Florida's standards for professional conduct, and thus, warrants disbarment.
In view of the totality of the circumstances, we disbar the respondent from the practice of law effective July 27, 1992, thus allowing the respondent thirty days to close her practice and protect her client's interests. The respondent shall not accept new business after the date of this opinion. Judgment is awarded for costs in the amount of $7,655.73 against the respondent, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Art. V, § 15 of the Fla. Const.
[2] We note that Count II of the instant case concerns only Williams' lie to the Grievance Committee and not her misconduct in inducing Jeanette Mann to sign the quitclaim deed to the property. The record shows that the Grievance Committee investigated Williams' misconduct concerning the quitclaim deed and found that Williams accepted the quitclaim deed rather than a mortgage as a collateral security for her legal fee, and that Williams failed to handle the collateral security in accordance with Florida's laws relating to mortgages. In addition, the Grievance Committee also found that Williams failed to fully disclose to Judge and Mann the consequences of accepting the deed as a collateral security instrument. Thus, the Grievance Committee found Williams guilty of violating Disciplinary Rule 1-206(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on fitness to practice law) of the former Code of Professional Responsibility. Williams received a private reprimand for this misconduct. The record also shows that Mann recovered a $15,000 civil judgment against Williams as well as legal and equitable title to the property. Mann also testified that she had filed a claim with the Client Security Fund of The Florida Bar.